UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONALD MACK BENNETT,

                          Plaintiff,

          -v-                                                    Case No. 05-CV-1358 (KMK)(LMS)

                                                                 ORDER PARTIALLY ADOPTING
                                                                 REPORT & RECOMMENDATION
OFFICER FALCONE #105, OFFICER BUONO OF
NEW ROCHELLE POLICE DEPT.,

                          Defendants.

KENNETH M. KARAS, District Judge:

          Donald Mack Bennett ("Plaintiff"), proceeding pro se, brought this Action against

Officer Buono ("Buono") and Officer Falcone #105 ("Falcone") (collectively, "Defendants") of

the New Rochelle Police Department ("NRPD") asserting claims, pursuant to 42 U.S.C. § 1983

("Section 1983"), for excessive use of force and denial of medical treatment in connection with

Plaintiff's arrests on February 4, 2004 and September 30, 2004.  Defendants moved for summary

judgment on Plaintiff's claims, and on September 26, 2008, Magistrate Judge Lisa Margaret

Smith, to whom this motion was referred, recommended that the Court grant Defendants'

motion.  For the reasons stated herein, the Court adopts Magistrate Judge Smith's Report and

Recommendation ("R&R") to the extent it is consistent with this Order, and denies in part and

grants in part Defendants' motion for summary judgment.

                                        I.  Background

          Plaintiff filed his Complaint with the Pro Se Clerk's Office on December 2, 2004,[1]

_____

          [1] Plaintiff's Complaint was filed and docketed on February 2, 2005, after Plaintiff was
permitted by the district court to proceed *in forma pauperis*.  (Dkt. No. 3.)

alleging violations of his constitutional rights in connection with his arrest by Buono on February 4, 2004 and his arrest by Falcone on September 30, 2004.  Plaintiff further alleged that Thomas Chanpalilli ("Chanpalilli"), a store owner, wrote a false claim against him in connection with his September 30, 2004 arrest.  On February 2, 2005, then-Chief Judge Michael B. Mukasey, to whom this case was originally assigned,[2] issued an Order of Partial Dismissal, dismissing the Complaint as to Chanpalilli and dismissing Plaintiff's claims asserting criminal charges against Defendants.  (Dkt. No. 3.)  Defendants filed a motion to dismiss, which was denied (Dkt. No. 24), and then filed their Answer on March 28, 2007 (Dkt. No. 25).  On June 20, 2008, Defendants filed the instant motion.  (Dkt. No. 44.)

This case was referred to Magistrate Judge Smith for review pursuant to 28 U.S.C. § 636(b) on May 7, 2007.[3]  On March 20, 2008, Magistrate Judge Smith entered an Order denying Plaintiff's motion for further responses to the interrogatories he served on Defendants on October 18, 2007.  On September 26, 2008, Magistrate Judge Smith issued the R&R, concluding that this Court should grant Defendants' motion for summary judgment.  Plaintiff was advised of his right to file objections to the R&R, and on November 3, 2008,[4] Plaintiff filed

---

[2] This case was later reassigned to Judge Barbara S. Jones on February 28, 2005, and on August 6, 2007, it was reassigned to this Court.

[3] The case was initially referred by Judge Jones to Magistrate Judge Ronald L. Ellis, and on May 7, 2007, it was referred by Chief Judge Kimba M. Wood to Magistrate Judge Smith.

[4] On October 10, 2008, Magistrate Judge Smith entered an Order re-sending the R&R to Plaintiff at his correct mailing address and extending Plaintiff's time to file written objections from the date of the Order.  (Dkt. No. 49.)  On October 23, 2008, this Court granted Plaintiff's request for an additional extension of time and gave Plaintiff until December 3, 2008 to submit his objections to the R&R.  (Dkt. No. 50.)

2

his objections to the report.[5]

The factual background of this case is fully set forth in the R&R, and the Court assumes the Parties' familiarity therewith.[6]

---

[5] Plaintiff sent a letter to the Court on February 25, 2009, requesting a 120-day extension of any further proceedings in the case, so that Plaintiff could recover from certain health issues prior to appearing before the Court in this action. Because the Court is deciding Defendants' motion for summary judgment on the papers, Plaintiff's request is denied as moot.

Plaintiff additionally requested that the Court appoint counsel from the pro bono panel. This is Plaintiff's third such request. Magistrate Judge Smith twice previously has denied Plaintiff's request for pro bono counsel without prejudice to renew after sufficient evidence has been obtained upon which the Court could consider the merits of Plaintiff's application. (Dkt. Nos. 31 & 41.) For the reasons stated in Magistrate Judge Smith's May 31, 2007 Decision and Order denying Plaintiff's application (Dkt. No. 31), the Court denies Plaintiff's request for appointment of counsel without prejudice to renew should subsequent submissions or proceedings indicate that this litigation is sufficiently meritorious to warrant appointment or should Plaintiff offer sufficient evidence to show that he is unable to represent himself or that "special reasons" warrant appointment of counsel in this particular case. *See Hodge v. Police Officers*, 802 F.2d 58, 60-62 (2d Cir. 1986).

[6] The facts set forth in the R&R are taken from Plaintiff's Complaint, Defendants' Rule 56.1 Statement ("Defendants' 56.1 Statement"), and the evidence submitted by Defendants in support of their motion, including deposition testimony from Plaintiff, deposition testimony from Plaintiff's witness (Ms. Coreth Sewell), and affidavits from Buono, another NRPD officer who responded to the dispatch concerning the February 4 incident (Officer Randy Reif), and Falcone. Because Plaintiff did not submit a response to Defendants' 56.1 Statement, Magistrate Judge Smith deemed the facts taken from Defendants' 56.1 Statement as admitted, but construed the facts in the light most favorable to Plaintiff. In his Objections to the R&R, Plaintiff objects to a number of the factual assertions relied upon by Magistrate Judge Smith in recommending that the Court grant summary judgment. In light of Plaintiff's pro se status, the Court has examined carefully Plaintiff's objections, summary judgment motion papers, and evidentiary proffers. *See Sease v. Phillips*, No. 06-CV-3663, 2008 WL 2901966, at *1 n.1 (S.D.N.Y. July 24, 2008) (exercising discretion to excuse pro se plaintiff's failure to comply with the local rules because of his status as a pro se plaintiff).

It bears noting, however, that, although Plaintiff claims he never received Defendants' 56.1 Statement (Pl.'s Obj. ("Obj.") 4), it was annexed to Defendants' Notice of Motion for summary judgment, and Defendants submitted an affidavit of service stating that Plaintiff was served with Defendants' 56.1 Statement on June 20, 2008. Further, Plaintiff's response to Defendants' summary judgment motion relies on exhibits and facts referenced in Defendants' 56.1 Statement, which belies Plaintiff's assertion that he did not receive these materials. (*See, e.g.*, Pl.'s Reply Aff. in Opp'n to Defs.' Summ. J. ("Pl.'s SJ Aff.") 4 (noting that plaintiff received the NRPD police incident report related to his February 4, 2004 arrest with Defendants'

II.  Discussion

A.  Standard of Review

    1.  Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, as Plaintiff has here, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1.  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *See Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

With regard to a magistrate judge's decision on a non-dispositive matter, such as a discovery dispute between the parties, "[t]he district judge in the case must consider timely

---

motion for summary judgment).)

4

objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  The magistrate judge's findings may be considered "clearly erroneous" where, "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'"  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes."  *Aurora Loan Servs. v. Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 477 (S.D.N.Y. 2007) (internal quotation marks omitted).

### 2.  Motions for Summary Judgment

Summary judgment may be granted where it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor.  *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006).  "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his [or her] favor."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

"A fact is material when it might affect the outcome of the suit under the governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that the materiality of the facts considered by the court will be governed by substantive law). "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Goenaga*, 51 F.3d at 18 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be to "isolate and dispose of factually insupportable claims." *Celotex*, 477 U.S. at 323-24.

Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 128 S. Ct. 1147, 1158 (2007) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."); *accord Erickson v. Pardus*, 127. S. Ct. 2197, 2200 (2007) (per curiam). The Court therefore construes Plaintiff's pleadings liberally so as to interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Dimps v. Dist. Council 37*, No. 01-CV-1735, 2002 WL 206992, at *2 (S.D.N.Y. Feb. 8, 2002) ("Pro se plaintiffs are entitled to a far more generous reading of their pleadings than would otherwise be afforded to one who is represented by an attorney" (internal quotation marks and alterations omitted)). This more lenient approach to construing a pro se

6

plaintiff's pleadings does not, however, "relieve [P]laintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  In particular, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lyerly v. Koenigsmann*, No. 04-CV-3904, 2006 WL 1997709, at *2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted).

B.  Plaintiff's Objection to Magistrate Judge Smith's March 20, 2008 Order

In his Objections to the R&R, Plaintiff argues that Defendants refused to answer the interrogatories he had served on them.  (Obj. 1.)  The Court construes Plaintiff's objection as a request to modify or set aside Magistrate Judge Smith's March 20, 2008 Order (Dkt. No. 42), wherein she ruled that Defendants were not required to make any further responses to Plaintiff's interrogatories.  As noted above, the Court will only set aside Magistrate Judge Smith's discovery order if it is clearly erroneous or is contrary to law.  Magistrate Judge Smith's March 20, 2008 Order reflects careful consideration of the interrogatories, responses, objections, and record.  Having reviewed Magistrate Judge Smith's decision, the Court finds no clear error and therefore denies Plaintiff's request to modify it or set it aside.

C.  Plaintiff's Objections to the R&R

The Court construes Plaintiff's objections as pertaining to the R&R in its entirety.  (*See* Obj. 3 (noting that Plaintiff "objects totally" to the R&R, which he states is "frivolous").)  The Court reviews *de novo* those aspects of the R&R to which the Plaintiff has raised specific and timely objections, with the balance subject to review for clear error only.[7]  *See* Fed. R. Civ. P.

_____

   [7] Plaintiff has raised alternate grounds for relief and additional claims for damages in his Objections to the R&R.  For example, Plaintiff states that he wants perjury charges brought

72(b).

### 1.  Plaintiff's Objections to R&R Regarding Claims Against Buono

#### a.  Excessive Force Claim

As to Plaintiff's excessive force claim against Buono, Magistrate Judge Smith concluded that Buono was entitled to summary judgment on grounds of qualified immunity because, based on the record, "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice."  (R&R 7-8 (quoting *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (alterations in original)).)  In particular, Magistrate Judge Smith found that the record did not support Plaintiff's claim that he had been kicked and also established that Plaintiff physically resisted being taken into custody by lying down with his feet out of the door to prevent the officers from closing the door to the police vehicle.  (R&R 8

---

against Defendants.  (Obj. 5.)  However, as explained in then-Chief Judge Mukasey's February 2, 2005 Order (Dkt. No. 3), a private citizen cannot prosecute a criminal action, such as perjury, in federal court.  *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) (noting that it is a "truism" long recognized by federal courts that crimes are always prosecuted by the government and not by private complaint); *accord Brown v. Seniuk*, No. 01-CV-1248, 2002 WL 32096576, at *1 (E.D.N.Y. Mar. 25, 2002) ("[I]t is axiomatic that a private citizen cannot bring a criminal complaint."); *Shoemaker v. Am. Broad. Cos.*, No. 99-CV-2610, 1999 WL 1084247, at *4 (S.D.N.Y. Dec. 1, 1999) (dismissing claims alleging the violation of federal and state criminal laws on basis that private citizens cannot bring suit under criminal statutes).  In addition, Plaintiff asks the Court to grant him an injunction against the NRPD, which, according to Plaintiff, is "very corrupt."  (Obj. 5.)  However, the NRPD is not a party in this case, and Plaintiff never sought leave to amend his Complaint to add the NRPD as a party.  Further, even if Plaintiff had sought such leave, it would be denied by the Court, as the time for discovery has long passed and permitting an amendment would cause undue delay in the resolution of the dispute and would unduly prejudice Defendants.  *See, e.g.*, *Zahra v. Town of Southold*, 48 F.3d 674, 685-86 (2d Cir. 1995) (affirming denial of leave to amend where undue delay existed); *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 150-51 (S.D.N.Y. 2003) (denying leave to amend complaint where (1) the moving party waited nearly two years to amend, (2) the amendment would be prejudicial because it was sought after the allowable discovery period, and (3) discovery would have to be reopened for the proposed new defendants).

(citing Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶¶ 27, 35; Decl. of Lalit Loomba, Esq. ("Loomba Decl."), Ex. I at 24).)  Having reviewed the matter *de novo*, the Court finds that there is a material question of fact regarding what transpired when Plaintiff was taken into custody and, as a result, summary judgment, on either Fourth Amendment or qualified immunity grounds, is inappropriate.

Plaintiff's objections consist of a number of factual assertions that he believes undercut Magistrate Judge Smith's determination.  First, Plaintiff argues that he was not disorderly at the laundromat but was merely "washing his clothes."  (Obj. 1.)  However, Plaintiff pleaded guilty to disorderly conduct following his arrest, a fact he admitted during his deposition.  (Dep. of Donald Mack Bennett ("Pl.'s Dep.") 73.)  In addition, Plaintiff alleges that Buono followed him to the laundromat for the specific purpose of harassing him.  (Obj. 2.)  In contrast, Defendants state that Buono responded to the laundromat after receiving a call from police headquarters about a disorderly person inside the laundromat.  (Defs.' 56.1 ¶ 21.)  This statement is bolstered by Officer Reif, an NRPD officer patrolling in a separate police vehicle who also responded to the dispatch.  (Defs.' 56.1 ¶ 23; Aff. of Randy Reif ("Reif Aff.") ¶ 4.)  Regardless, in determining whether excessive force was used in connection with an arrest, the question is whether Buono's actions were objectively reasonable "without regard to their underlying intent or motivation."  *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002).  Therefore, Plaintiff's allegations regarding Buono's intentions are not relevant to the Fourth Amendment "reasonableness" inquiry.

Plaintiff's most substantive factual objection is that he never resisted arrest and that Buono stomped on his left ankle – with full knowledge that Plaintiff's ankle was injured.  (Obj.

2.)  Indeed, Plaintiff has consistently alleged and testified that Buono "stomped" on his left ankle in effectuating his arrest.  (Compl. 3; Pl.'s SJ Aff. 4.)

Officers Reif and Buono conversely claim that they did not kick Plaintiff.  (Defs.' 56.1 ¶ 32; Aff. of Jason Buono ¶ 8; Reif Aff. ¶ 11.)  In addition, both officers, as well as Ms. Coreth Sewell, a patron of the laundromat who witnessed relevant events and was later deposed, stated that Plaintiff resisted the officers' attempts to get him into the police vehicle by lying down and sticking his legs out of the police vehicle to prevent the officers from closing the vehicle door – a fact that Plaintiff contests.[8]  (Defs.' 56.1 ¶¶ 27, 35; Loomba Decl., Ex. I at 24; Compl. 3; Obj. 2.) However, Ms. Sewell did testify that she heard Mr. Bennett scream out in pain and tell the officers that they were hurting him.  (Loomba Decl., Ex. I at 23.)

"The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest."  *Mickle*, 297 F.3d at 120 (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  "Determining whether the force used during an arrest is 'reasonable' requires balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Lennon*, 66 F.3d at 425 (quoting *Graham*, 490 U.S. at 396).  A police officer is entitled to use reasonable and necessary force to effect an arrest and to protect himself, his fellow officers and others.  *See Graham*, 490 U.S. at 396.  Thus, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id*. at 397 (internal quotation marks omitted); *accord Sullivan v. Gagnier*, 225

_____

[8] Plaintiff argues that he objects to everything stated by Ms. Sewell.  (Obj. 2.)  However, such an objection is neither specific nor timely, *see* Fed. R. Civ. P. 72(b).  Plaintiff did not object to Ms. Sewell's deposition during the discovery period.  It bears noting, further, that Ms. Sewell was a witness originally identified by Plaintiff.

F.3d 161, 165 (2d Cir. 2000) ("A claim that excessive force was used in the course of a seizure is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest.").  However, "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." *Husbands v. City of New York*, No. 05-CV-9252, 2007 WL 2454106, at *10 (S.D.N.Y. Aug. 16, 2007) (internal quotation marks omitted).

Plaintiff argues that the force that was used against him was unnecessary because he did not resist arrest, and he was suffering from a preexisting injury that was evident to the police officers. *See Pierce v. Chautauqua County*, No. 06-CV-644C, 2007 WL 2902954, at *7 (W.D.N.Y. Sept. 28, 2007) (noting that fact that plaintiff was already injured would weigh against the officers' claims that the force they implemented was necessary).  Thus, Plaintiff has stated that there was little or no need for force.  If Plaintiff's account is to be credited, which the Court must do for purposes of the instant motion, and Buono intentionally stomped on Plaintiff's previously broken left ankle, the Court cannot hold that this use of force was objectively reasonable as a matter of law.  *See Davis v. City of New York*, No. 04-CV-3299, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (noting that if plaintiff "was intentionally kicked in the shoulder for no reason while handcuffed on the floor, the Court cannot hold that the alleged gratuitous use of force by an officer can constitute an objectively reasonable use of force as a matter of law"); *Graham v. Springer*, No. 03-CV-6190, 2005 WL 775901, at *6 (W.D.N.Y. Apr.

5, 2005) ("If the Court accepts plaintiff's version as true, which it must, it cannot say that the kick or kicks were objectively reasonable as a matter of law.").

In this case, Plaintiff and Defendants offer materially different accounts of the February 4, 2004 arrest. Though Plaintiff's evidence is paper-thin – it consists primarily of his own testimony and Ms. Sewell's account that he screamed out in pain – it is nevertheless sufficient to indicate the existence of a disputed material fact as to whether or not Buono applied excessive force in effecting Plaintiff's arrest. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (finding dismissal of an excessive force claim inappropriate where there were "genuine issues of material fact concerning what transpired"). In addition, there is a material question of fact with respect to the extent to which Plaintiff was resisting arrest. *See Genia v. N.Y. State Troopers*, No. 03-CV-870, 2007 WL 869594, at *19 (E.D.N.Y. Mar. 20, 2007) (denying summary judgment on excessive force claim where there was dispute about whether Plaintiff resisted arrest).

District courts generally "may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Although Plaintiff's story concerning Buono's alleged use of excessive force "is certainly inconsistent with other evidence and is subject to serious question, it is not so blatantly false that the Court may simply reject it as a matter of law." *Moore v. Casselberry*, 584 F. Supp. 2d 580, 587 (W.D.N.Y. 2008) (noting that "discrepancies go to the weight to be accorded to plaintiff's testimony"); *see also Archer v. Dutcher*, 733 F.2d 14, 16 (2d

12

Cir. 1984) (reversing grant of summary judgment and noting that although the plaintiff's "case may well be without merit . . . . [Plaintiff's] affidavit in opposition to the motion for summary judgment does raise material factual disputes, irrespective of their likely resolution").  As a result, "[d]espite the fact that Defendants' rendition of the facts contradicts that of Plaintiff, and, notwithstanding Defendants' corroborating evidence," which in this case includes Ms. Sewell's statement that Plaintiff was resisting arrest, "Plaintiff's allegations survive Defendants' Motion for Summary Judgment." *Rossi v. Stevens*, No. 04-CV-1836, 2008 WL 4452383, at *6 (S.D.N.Y. Sept. 30, 2008).

For the same reasons Plaintiff's excessive force claim survives summary judgment, the Court holds Defendants' qualified immunity claim insufficient.  Qualified immunity operates to shield a government official sued "individually" (in a personal capacity) from suits for damages under Section 1983 unless the complained-of conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Neu v. Corcoran*, 869 F.2d 662, 665 (2d Cir. 1989) (applying *Harlow*).  Courts perform a two-part inquiry in determining whether an official is entitled to qualified immunity.  *See Pearson v. Callahan*, 129 S. Ct. 808, 815-18 (2009); *accord Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001).  The first inquiry is "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  The second inquiry is "whether the [constitutional] right was clearly established." *Id.*; *see also Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).  According to the Supreme Court's recent decision in *Pearson*, 129 S. Ct. at 818, a lower court may exercise discretion in deciding which of the two prongs of qualified immunity should be addressed first.

13

*Id.* (rejecting requirement in *Saucier*, 533 U.S. at 201, that the two prongs be determined sequentially).

If Plaintiff's account is to be credited, Buono "would not be entitled to qualified immunity on [Plaintiff's] excessive force claim[], because a reasonable officer would have known that repeatedly punching, kicking, and stomping on [Plaintiff] violated a clearly established constitutional right not to be subjected to excessive force during arrest." *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *6 (S.D.N.Y. May 9, 2006); *see also Johnson v. City of New York*, No. 05-CV-2357, 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (noting that if plaintiff's claims that he was "stomped on" and "kicked" by officers were resolved in his favor, it "could lead a reasonable jury to find that his Fourth Amendment rights were violated" and qualified immunity also would not be available because "it could not be objectively reasonable for [the officer] to have believed that the use of gratuitous force . . . [was] allowed under the law" (internal alterations omitted)).  At a minimum, the question of whether it was reasonable for Buono to believe that his actions did not violate clearly established constitutional rights is one that depends on whether one believes his version of events.  For the reasons discussed above, Buono's version of events is adequately (even if barely) disputed by Plaintiff, and the matter of Buono's qualified immunity therefore cannot be resolved as a matter of law.

### b.  Deprivation of Medical Treatment Claim

As to the claim of unconstitutional denial of medical treatment, Magistrate Judge Smith noted that Plaintiff provided no evidence that he in fact requested medical attention from Buono.  (R&R 9.)  Further, Magistrate Judge Smith found that Plaintiff's claim, which is

governed by the Due Process Clause of the Fourteenth Amendment,[9] additionally failed on the

merits because Plaintiff provided no evidence that he suffered from a serious medical condition

following his arrest.  (*Id.*)  Having reviewed the matter *de novo*, the Court agrees with Magistrate

Judge Smith and adopts that portion of the R&R.

In his Objections to the R&R, Plaintiff offers no evidence showing that he made a request

for medical treatment to Buono or that Buono specifically denied him medical treatment but

states that "plaintiff did not receive any medical attention from [N]ew [R]ochelle or it took over

a week to be[] seen by the chronic care physician."[10]  (Obj. 3.)  Accordingly, Plaintiff has not

established any personal involvement by Buono in the alleged constitutional deprivation of his

right to medical treatment.  *See Beck v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d

107, 122 (2d Cir. 2004) ("'[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *McKinnon v.*

*Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)));  *Bangura v. County of Nassau*, No. 07-CV-2966,

_____

[9] While a convicted prisoner's right to medical assistance stems from the Eighth
Amendment's ban on cruel and unusual punishment, the right of a pretrial detainee to medical
care arises under the Due Process Clause of the Fourteenth Amendment.  *See Weyent v. Okst*,
101 F.3d 845, 856 (2d Cir. 1996); *Boomer v. Lanigan*, No. 00-CV-5540, 2002 WL 31413804, at
*6 (S.D.N.Y. Oct. 25, 2002).

[10] At his deposition, Plaintiff testified that, after Buono drove him to police headquarters,
"Officer Tanya Williams . . . with two other officers" was standing there, and "then they brought
me inside."  (Pl.'s Dep. 71.)  After he was brought to the booking desk, "[he] asked them . . . to
go to the hospital."  (*Id.*)  Plaintiff never testified that Buono was one of the officers who brought
him inside to the booking desk or denied him medical treatment.  Plaintiff's evidence on this
point consists of his later statement in his summary judgment response papers that he told Buono
that he needed medical attention.  (Pl.'s SJ Aff. 4.)  Even assuming *arguendo* that Plaintiff's later
statement that he told Buono he needed medical care is not inconsistent with his earlier
deposition testimony, Plaintiff's denial of medical treatment claim fails because, as discussed
above, he has not offered any evidence showing that Plaintiff had a serious medical condition to
which Buono showed deliberate indifference.

15

2009 WL 57135, at *6 (E.D.N.Y. Jan. 7, 2009) (dismissing Eighth Amendment denial of access to medical care claim where there was an absence of facts to support the defendant's personal involvement and the facts were insufficient to allege a constitutional violation); *Bennett v. Hearle*, No. 04-CV-5086, 2007 WL 2119866, at *2 (S.D.N.Y. July 23, 2007) (dismissing claim against defendant where same plaintiff in this case had not submitted any evidence suggesting that defendant was involved in the alleged violation of plaintiff's rights (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).

Even if Plaintiff sufficiently alleged Buono's personal involvement in the denial of medical treatment, in order to prevail on his claim, Plaintiff must prove that Buono "denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyent v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  To prove that Buono unconstitutionally denied Plaintiff medical treatment, Plaintiff must show deliberate indifference under both an objective and a subjective standard.  *See Boomer v. Lanigan*, No. 00-CV-5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) ("To prove a violation [under the Fourteenth Amendment], a plaintiff must show deliberate indifference under an objective and subjective test."  (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996))).  The objective standard contemplates "a condition of urgency that may produce death, degeneration or extreme pain," of which the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Vondette v. McDonald*, No. 00-CV-6874, 2001 WL 1551152, at *4 (S.D.N.Y. Dec. 5, 2001) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)) (internal quotation marks and alterations omitted); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (noting that the standard "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'" (quoting *Hathaway*, 37 F.3d at 66)).  The

subjective prong of the test requires Plaintiff to establish that Buono acted with a sufficiently culpable state of mind.  That is, the official must "intentionally deny[] or delay[] access to medical care or intentionally interfere with the treatment once prescribed."  *Boomer*, 2002 WL 31413804, at *6 (quoting *Estelle*, 429 U.S. at 104-05) (internal quotation marks omitted).  Thus, mere negligence will not constitute deliberate indifference.  *See Chance*, 143 F.3d at 703 (noting that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim").

Defendants do not contest the fact that Plaintiff had a pre-existing injury to his left ankle, which occurred on April 5, 2003, when Plaintiff tripped on a sidewalk in New Rochelle.  (Defs.' 56.1 ¶¶ 13-14.)  However, Plaintiff admits that the cast for this injury had been removed by July 4, 2003 (Pl.'s Dep. 26-27), and he has not submitted any evidence concerning any injuries he allegedly suffered as a result of his arrest.[11]  In addition, Plaintiff has offered no evidence proving that Buono acted intentionally to deprive Plaintiff of requested medical treatment.  Accordingly, "[P]laintiff has failed to offer concrete evidence from which a jury could reasonably find that he suffered from a serious medical condition, or that [Defendant] regarded plaintiff's medical condition with deliberate indifference."  *Vondette*, 2001 WL 1551152, at *4.

---

[11] The Court notes that the absence of a serious medical injury is not, however, fatal to Plaintiff's excessive force claim.  *See, e.g.*, *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (noting that while a jury may consider the lack of serious injury as evidence that the implemented force was not excessive, it does not entitle defendants to judgment as a matter of law); *Li v. Aponte*, No. 05-CV-6237, 2008 WL 4308127, at *6 (S.D.N.Y. Sept. 16, 2008) ("Bruising alone is sufficient to preclude summary judgment on the ground that the force employed was *de* [*minimis*].").

2.  Plaintiff's Objections to R&R Regarding Claims Against Falcone

a.  Excessive Force Claim

Plaintiff also claims that Officer Falcone used excessive force and denied Plaintiff

necessary medical care in connection with his September 30, 2004 arrest.[12]  Magistrate Judge

Smith recommended that the Court grant summary judgment on Plaintiff's excessive force

claim because (1) the limited use of force exercised by Falcone against Plaintiff did not infringe

upon Plaintiff's Fourth Amendment rights, and, alternatively, (2) Falcone was entitled to

qualified immunity because it was objectively reasonable for him to believe that the use of force

he employed in effecting Plaintiff's arrest did not violate clearly established constitutional rights.

(R&R 12-13.)

To determine whether Falcone used excessive force in effecting Plaintiff's arrest in

violation of the Fourth Amendment, the Court must examine whether Falcone's actions were

"objectively reasonable" in light of the facts and circumstances presented to him, without regard

to his underlying intent or motivation.  *See Graham*, 490 U.S. at 397.  As noted above, this

requires evaluating "the reasonableness of the force used by considering the totality of the

circumstances faced by the officer on the scene."  *Lennon*, 66 F.3d at 425.

Plaintiff alleges that Falcone pulled him out of the police car at police headquarters,

causing Plaintiff to bang his ankle and his head, and subsequently shoved Plaintiff into a locker at

the NRPD headquarters, causing him to suffer a small gash on his forehead.  (Pl.'s Dep. 111;

Compl. 3.)  Plaintiff acknowledges that he never sought medical attention for these injuries.

(Pl.'s Dep. 108.)  Falcone, in his defense, asserts that he did not transport Plaintiff to the police

---

[12] This arrest obviously involves entirely separate claims than those related to the
February 4, 2004 arrest.

station.  (Aff. of Louis Falcone ("Falcone Aff.") ¶ 7.)  Indeed, Defendants have provided the

NRPD incident report of the September 30, 2004 arrest, which reflects that Plaintiff was

transported to police headquarters by Officer Timothy Grosso.  (Falcone Aff., Ex. 2.)  Plaintiff

has not produced any evidence to refute Defendants' claim that Falcone did not transport him to

headquarters, but rather has alleged that Falcone lied about the date of the arrest.  (Pl.'s SJ Aff. 7.)

Plaintiff asserts that the arrest could not have occurred on September 30, 2004, because he was in

the hospital recovering from a heart attack he had on September 26, 2004 – although he has not

produced any hospital records or other evidence showing he was in the hospital on that date.

(Pl.'s SJ Aff. 7.)  However, in his Objections to the R&R, Plaintiff now claims that his arrest

actually occurred on September 26, 2004, the same day he was allegedly in the hospital.[13]  (Obj.

4.)  Additionally, in the affidavit he submitted in response to Defendants' motion to dismiss,

Plaintiff stated that his forehead "looks to be permanently scar[r]ed" from the gash he received at

police headquarters.  (Pl.'s Further Reply Aff. to Defs.' Mot. to Dismiss 2.)  However, during his

deposition, Plaintiff admitted that the cut on his forehead was "nothing," a "scrape," and only "a

little sissy thing."  (Pl.'s Dep. 107, 111.)

     Even assuming that it was Falcone who transported Plaintiff to police headquarters,

however, Plaintiff has not proven either that Falcone engaged in conduct that violated Plaintiff's

---

[13] Defendants have submitted a booking sheet from the NRPD showing that Plaintiff was
arrested on September 30, 2004 and that the arresting officer was Falcone.  (Falcone Aff., Ex. 4
(NRPD Booking Sheet).)  Further, as discussed above, although Plaintiff claims in his
Objections to the R&R that the arrest actually took place on Sunday, September 26, 2004 (Obj.
4), in the affidavit he submitted in response to Defendants' summary judgment motion, he
stated that he was in the hospital recovering from a heart attack on that date (Pl.'s SJ Aff. 7).
Regardless, the Court finds that this fact has no bearing on Plaintiff's excessive force claim
because, as discussed above, even crediting Plaintiff's account of the incident, Plaintiff has not
shown that Falcone engaged in conduct that violated his constitutional rights.

constitutional rights or that he suffered any serious injuries.  First, Plaintiff has failed to identify any evidence that Falcone engaged in excessive force.  Plaintiff's testimony is that when Falcone pulled Plaintiff out of the police car, Plaintiff's ankle got stuck in the car.  (Pl.'s Dep. 111.)  After this happened, according to Plaintiff, Falcone walked away, telling Plaintiff to get himself out of the car.  (*Id.*)  Taking Plaintiff's own version of events, the Court finds that no reasonable juror could find anything unconstitutionally excessive about Falcone's conduct.  While it may be that Plaintiff's ankle got caught in the car, there is no evidence that Falcone did anything to intentionally cause that injury or otherwise engage in any force against Plaintiff.  Indeed, when Plaintiff complained about being stuck in the car, Falcone applied no force but instead allegedly left it to Plaintiff to get himself out of the car.  Further, given Plaintiff's own admission that the impact to his forehead was "nothing" (Pl.'s Dep. 111) and only a "little sissy thing" (*id.* at 107), he has no claim related to this injury, notwithstanding his attempts to embellish this claim.  *See Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting [statements] in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *accord Smith v. Ward Leonard Elec. Co.*, No. 00-CV-3703, 2004 WL 1661098, at *8 (S.D.N.Y. July 23, 2004) (noting that a plaintiff "cannot rely on his affidavit to change what he testified to at his deposition").  While the Court is aware that the absence of a serious medical injury is not fatal to an excessive force claim, *see Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987), Plaintiff's deposition testimony indicates that no excessive force was used against him in the prison cell, *see Lennon*, 66 F.3d at 426 (granting summary judgment where no material facts were in dispute and no reasonable jury could have found that the force used was so excessive that no reasonable officer would have made the same choice); *Williams v. City of New York*, No. 05-CV-10230, 2007

WL 2214390, at *11 (S.D.N.Y. July 26, 2007) ("Even drawing all inferences in favor of [plaintiff], no jury could conclude that [plaintiff's] scrapes and bruises reflect more than a de minimis injury."). Thus, crediting Plaintiff's account of events, the Court finds that no reasonable juror would find that the use of force by Falcone was not objectively reasonable under the Fourth Amendment.

Similarly, the Court agrees with Magistrate Judge Smith that Falcone is, at a minimum, entitled to qualified immunity on Plaintiff's excessive force claim. As discussed above, public officials generally are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *See Scott*, 127 S. Ct. at 1774 (applying the two-part inquiry); *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (same); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (noting that availability of qualified immunity test depends on whether "'a reasonable officer could have believed'" his action "'to be lawful, in light of clearly established law and the information [he] possessed'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987))). Viewing the evidence in the light most favorable to Plaintiff, Falcone would not reasonably have believed that whatever force he used to remove Plaintiff from the police car and into the NRPD headquarters, which Plaintiff alleges caused him to get his ankle stuck and receive a scratch to the forehead that was "nothing" (Pl.'s Dep. 111) was in violation of Plaintiff's clearly established constitutional rights.

Plaintiff's remaining objections concerning the excessive force claim are baseless. Plaintiff states that he never stole anything from the store on September 30, 2004 and that there was no proof that he did. (Obj. 4.) Plaintiff, however, pled guilty to petit larceny and admitted during his deposition that he stole a can of beer. (Defs.' 56.1 ¶¶ 42, 56; Pl.'s Dep. 99.) Plaintiff

also argues that he has a witness, who will appear at trial to testify that Plaintiff did not steal a beer and that Falcone is lying.  (Obj. 4.)  However, Plaintiff's broad contention that he has a surprise witness that he can produce at trial is insufficient to create a genuine issue of fact and thereby avoid summary judgment.  Plaintiff could have submitted an affidavit from this eyewitness or had the witness deposed.  Rather, Plaintiff is asking the Court to rely on unspecified statements by an unidentified, non-party witness.  This the Court will not do.

Given Defendants' undisputed evidence and Plaintiff's failure to raise a triable issue of fact, the Court finds that Plaintiff cannot establish that Falcone violated Plaintiff's constitutional rights and moreover, at a minimum, Falcone is entitled to qualified immunity on Plaintiff's excessive force claim as no jury could "find that it was objectively unreasonable for [Falcone] to believe that the force used to [remove Plaintiff from] the car was not excessive."  *Lennon*, 66 F.3d at 426; *see also Bennett*, 2007 WL 2119866, at *2 (granting summary judgment where plaintiff's submissions failed to controvert evidence submitted by defendant).

### b.  Deprivation of Medical Treatment Claim

As to the Section 1983 claim for unconstitutional denial of medical treatment, Magistrate Judge Smith found that there was no evidence in the record that Plaintiff ever sought medical assistance from Falcone, or that he was ever denied such assistance.  (R&R 13-14.)  Plaintiff has not filed any objections to this portion of the R&R, and, thus, the Court reviews for clear error only.

Having reviewed all of the submissions made by Plaintiff, including Plaintiff's deposition, the Court finds no evidence, and indeed, no implied allegation, that Falcone personally denied Plaintiff medical treatment.  As a result, Plaintiff has not tendered any material fact as to which there is a genuine issue for trial, and summary judgment is therefore granted in favor of Falcone

22

on this claim.  *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (noting that "it is well settled . . . that personal involvement" in the constitutional violation "is a prerequisite to an award of damages under § 1983" (internal alterations omitted)); *see also Lopez v. Zenk*, No. 06-CV-4601, 2008 WL 3285895, at *1 (E.D.N.Y. Aug. 8, 2008) (stating plaintiff must allege that individual defendant was personally involved in the constitutional violation (citing *Thomas v. Ashcroft*, 470 F.3d 491, 498 (2d Cir. 2006))); *James v. Phillips*, No. 08-CV-1539, 2008 WL 1700125, at *8 (S.D.N.Y. Apr. 9, 2008) (dismissing denial of medical care claim because plaintiff had not come forward with evidence of personal involvement by defendant).

### III.  Conclusion

For the reasons stated herein, the Court adopts Magistrate Judge Smith's R&R to the extent it is consistent with this Order.  Accordingly, it is hereby

ORDERED that Defendants' motion for summary judgment is GRANTED on Plaintiff's denial of medical treatment claim against Officer Buono and DENIED on Plaintiff's excessive force claim against Officer Buono; it is further

ORDERED that Defendants' motion for summary judgment is GRANTED on Plaintiff's denial of medical treatment and excessive force claims against Officer Falcone; it is further

ORDERED that the Clerk of the Court is to terminate the pending motion (Dkt. No. 44)

and enter judgment in favor of Defendant Officer Falcone.

SO ORDERED.

Dated:        March 24, 2009
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

24

<u>Service List</u> (By Mail)

Donald Mack Bennett
P.O. Box-10
Valhalla, NY 10595
*Pro Se Petitioner*

Lalit K. Loomba, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604
*Counsel for Defendant*